Good morning. May it please the court, Anna Estival-Churchamonti, for defending Jose Ramos. I would like to spend my time focusing on the statutory question. Mr. Ramos is currently serving a sentence that exceeds the statutory maximum. First, all of the original offense conduct took place prior to the enactment of the PROTECT Act in April of 2003. Therefore, pursuant to the ex post facto clause, the aggregate rule applies, and his statutory maximum should have been capped at 24 months. Let me know that it all took place before April. I mean, we do have an indictment, a plea, an agreement that all suggests that this continued through May. So what is the record basis for us to conclude it really all ended in April? So really every part of the record that explains the offense conduct suggests or demonstrates that it concluded prior to April 2003. Well, I may want to hear from the government as to what their good faith basis is to think that it continued into May. But I'm not sure the record you're pointing us to conclusively shows that it ended before then. I mean, we do I would think that we would rely on these documents, including your client's plea allocution and plea agreement, that this continued into May. There are a few facts that demonstrate that it concluded prior to April 2003. First, the charging document itself discusses distribution of drugs in Buffalo and the Bronx, New York. It doesn't say anything about distributing drugs in Brooklyn and Manhattan, where he was ever since he was arrested and incarcerated in May 2002, a year prior. And the PSR also makes clear in its details of the offense conduct, there's no mention of distributing drugs from prison after May 2002. And in fact, the PSR lists disciplinary issues while Mr. Ramos was incarcerated and does not mention any drug distribution during that time. And he wasn't charged with a conspiracy, correct? I mean, because you can conspire to distribute drugs from prison without actually possessing them with intent to distribute. Certainly, but this count upon which the government is relying is the substantive drug distribution charge. Right, that's what I was asking. So it's not as if he could have been found to have not withdrawn from a conspiracy after he was detained and incarcerated. And with respect to the plea allocution in particular, which the government relies heavily on, the defendant only allocutes to a period of time between 1995 and 2003 without stating May 2003. So it really doesn't get the government. Yeah, his colloquy doesn't identify a specific act in 2003. I mean, it's just this general kind of, I mean, it's not very specific at all. What I don't understand is, I don't understand how this has gone on for so long like this. I mean, I'll be honest with you, this seems bizarre to me that there should be this confusion. And, you know, in 2013, or excuse me, 2017, when he gets violated, the violation is written in the context of the 2002 offense. And yet at the bottom of the document, it lists, it counts 5 through 9, which is the 2003 conduct. I mean, with all due respect, I want to know from the government, is that the way they do business? I don't understand this. I mean, this problem in the record, I mean, as to whether it ultimately becomes determinative or some other matter, but it seems very odd to me. Explanation? We agree that it is odd, and there seem to have been errors from the very beginning that seem to have very little explanation. With respect to the 2002 versus 2003 issue and the record all pointing to the fact that it was simply an error that was repeated in the charging document to some extent by the defendant in the allocution, and then repeated in the PSR despite there not being any factual support for it, that's why we attribute it to just human error. What about the error that at the time he's violated on August 30th, 2022, the second violation of supervised release, lists both the 2002 information and the 2002 indictment or information. One is an information, one is an indictment. It lists both. The violation on January 30th, 2017, I'm sorry, the violation May 20, 2017, based on the state arrest of January 30th, 2017, lists only the 2002 charges, which are two counts. Of those two counts, only count one had supervised release remained. Now, the supervised release continued on the charges from 2003, but they're not, as Judge Wesley pointed, it's not listed on the docket. I didn't find it anywhere on the docket sheet for the second case. So it doesn't appear he was violated at all on those charges. Didn't that come up during the second violation? Your reading of the record is the same as ours, and this did not come up during the most recent violation hearing. And this all relates to our second point in response to the government's argument that the district court could have sentenced Mr. Ramos for the other counts consecutively to add up to a period exceeding five years. But that's not what he did. That's not what Judge Kaplan said. Exactly. The fact that, you know, it's kind of like, well, Kaplan could have done this. But he didn't. That's exactly right. And even if he had, our argument is that that period of time would have expired, because as, Judge Kant, you just laid out the history, the five-year period of supervised release was running concurrently between 2013 and. . . I mean, in your reply brief, you didn't do the math. But taking the math most conservative, I was going to ask the government this question. It appears that 1,830 days passed on supervised release, and that he had, even giving him credit for leap years, he had five years, three days passed when the second violation was passed. And if that's the case, his period of supervised release for the count, whether he was possessing drugs in April of 2003 or May of 2003, the supervised release for that count had ended. So that doesn't map, then, that count. That's correct, Your Honor. And not wanting to speak for the government based on our recent conversations, we understand that they agree with that calculation with respect to that five-year period, inasmuch as it assumes that the sentences were running concurrently beginning in June 2013. I see that I'm over my time, so I'll reserve the rest for rebuttal. You have reserved, unless my colleagues have further questions, you have reserved three minutes for rebuttal. Thank you, thank you. Good morning, Attorney Gentile. Yes, good morning, Your Honors. Dominic Gentile for the United States. May it please the Court, I represent the government on this appeal. I represented the government in the district court proceedings below. The government's position, or the core of the government's argument, is that the five-year term of supervised release in the 2003 case did not begin to run until April 13th of 2021, which is when the defendant began to serve his new term of supervised release after the first violation. So why did it not run from June 14, 2013, until his arrest on state charges? They were to run concurrent, correct? Well, that's the focus of our argument here, Judge, is that... I didn't read that in your brief. I know they raised the five years in their reply brief, but what's the basis for that? So the question at the heart of this case is whether the district court issued the 2005, the district court judgment issued in 2005 imposing consecutive terms of supervised release, a judgment the government concedes was in contravention of the statute, whether it should be given effect in light of the fact that the judgment was never challenged in the district court in 2005, was never challenged on direct appeal, was never collaterally attacked in a 2255 petition, never challenged in either one of the VOSR proceedings below, and only challenged for the very first time in the defendant's reply brief here. But help me understand why he wasn't, when he was released on June 14, 2013, to having served the sentence on both the 2002 charges and the 2003 charges, why didn't his period of supervised release begin on the 2003 charges? This goes to Your Honor's point earlier. When the first violation report was issued in 2017, the May 2017 report, was only filed in the 2002 case, which meant that probation or suggests that probation understood that the only remaining term in the 2003 information was the five-year consecutive term of supervised release, which would not begin to run until the first term of supervised release ended. Well, that, I mean, that sounds great, except when I look at the charging, the warrant, and the judgment, it lists the 2000. It doesn't list the docket number. It lists the charges as if they're part of the 2002. So is that misleading the court? Because if you look on the face of it, and I'm looking at CA2, confidential appendix, CA2, it lists only the docket number for the 2002 case, and then it lists, by the way, it's a complete error, because it says count 1, 2, 3, 4, 5, 6, 7, 8, 9, which is actually erroneous as the offense. It's, you know, I would understand that reasoning if these counts weren't here or if they were separated as they were separated when he was violated on August 30, 2022. Your Honor, when this was prepared by probation, they only filed it in the 02 case. Okay. It's only on the 2002. But we can look at the judgment. I'm sorry. Please. I don't know why you think that's significant. It's not probation that makes this decision. I mean, it could have been a filing error. It's what the district court was doing here that matters. We agree, Your Honor. And what's your position on how the district court treated this? So as Mr. Ramos pointed out in his briefing, the district court only revoked one term of supervised release, and he instituted or imposed an additional five-year term after that first violation. So he only revoked one term of supervised release. It was only docketed in the one case. It was only the probation report, violation report, was only docketed in one case. The judge's judgment on that was only docketed in the one case. And that would be the 02 case? That would be the 02 case. Okay. It did not appear in the 03 case. But doesn't the judgment list both cases? I do not believe so, Judge. It's not in the docket of the 02 case, the first violation. It's not in the docket of the 02 case. So petition for warrant, I'm looking at CA-8. And I understand that the warrant, I understand that the docket sheet doesn't include a violation, the first violation on the second set of charges. But I'm looking at a warrant and a petition for warrant that lists all the counts but only one docket sheet. That's correct, Judge. And we think that's an error on the part of probation.  And now I'm going to look at the judgment. Wasn't there a judgment by the court? I mean, the judgment of the court suggests that. The judgment was only issued in the 02 case. And that's why we believe that the 03 supervised release term had not begun to run until Judge Kaplan revoked the terms of supervised release in the 02 case. Because he originally, in the 2005 judgment, he originally had the five-year terms of supervised release in the 03 case run consecutively. How do we know that the defendant understood he was only on supervised release on the 2002 charges and that he didn't begin his supervised release on the 2003 charges until his second violation? And that doesn't make sense to me. Because then, when do you claim the five years began to run on the second term of supervised release? The second term of supervised release began to run when the defendant was released from prison on the first violation, which was in April of 2021. Okay. Well, that doesn't, that, if they're to run concurrent, I mean consecutive, as you claim, then why would it run then? Why wouldn't it run until he finished the supervised release on the first information? Because he revoked that first term of supervised release and instituted the second term of supervised release on. Oh, so he canceled the first term. So it canceled the first term. And where does it say that now it's all of a sudden not going to be consecutive anymore, it's going to be concurrent? Well, we believe it is consecutive, Judge, because it's consecutive to the first term, which was revoked, even though it ran concurrently with the second term, which was a new term of supervised release. It sounds like a lot of roundabout explanations for something that on its face seems rather odd to me. And I don't know how this defendant would have known that when he was sentenced on the first violation and was released from that violation, that all of a sudden he now was going to serve, begin his term of supervised release on the 2003 information. You know, I understand that they raised it on a reply brief, but it's very disconcerting to me that I'm hearing this for the first time from the government without any basis or backup in terms of, you know, because on the record before this court, it appears this gentleman was sentenced for violated on a term of supervised release that had ended. Your opponent seemed to suggest that you had conceded this point. And I don't know if they've heard this argument from you or if they're hearing it for the first time as we are. They are not, Judge. This case is unusual in many respects, not the least of which was the openness with which we communicated with defense counsel and communicated our positions. It's true. It's a shame that openness wasn't made clear to the defendant when he was sentenced. You know, the paperwork is confusing, right? Would a defendant have understood that he wasn't beginning his second term of supervised release until after he finished the first term of supervised release? I think his counsel would have understood that, Judge. And the reason why counsel would have understood that is because at sentencing, Judge Kaplan specifically referenced he was revoking the single term of supervised release and imposing a new term of supervised release. May I take you back a little further in your argument? Did you early on acknowledge that running them consecutive was not permissible, that that was error, but that you were relying on the defendant not having raised it? That's correct, Judge. We do concede the point that the imposition of consecutive terms of supervised release was in contravention of 18 U.S.C. 3624. Okay. Let me ask you, what is the authority for concluding that a defendant can be held in violation of a term of supervision that is not lawful, that you're plainly conceding is not lawful? The only thing our position, Judge, is that the defendant has waived this argument. But we can overlook that, can't we? To the extent the court chooses to exercise its discretion and consider that argument, yes, of course. We previously characterized consecutive supervised release periods as, quote, plain error. Have we not? That's correct, Judge, yes. So plain error, an error that's obvious, an error that really didn't become relevant to Mr. Ramos until, what, some 19 years after his initial sentencing? I would respectfully disagree with that characterization, Judge. It was made plain and clear in his sentencing. Oh, no, I don't dispute that. I agree with you there, that the consecutive nature of it between the superseding indictment and the criminal information, which had the nine counts in it, and that relationship, that it was characterized as consecutive. But the problem is, is that it has significant ramifications here. But more importantly, there's so many tumblers here. I feel like I've got this old computer with all these tumblers turning all the time and all these different combinations. The first tumbler is, what is the time period of the conduct? If the time period of the conduct is all pre-Protect Act, the maximum exposure Mr. Ramos can face with regard to a violation of supervised release is 60 months in the aggregate. Is that correct? That's correct, Judge. All right. And tell me your best argument why this includes post-Protect Act besides his colloquy in which he said he acknowledged that he had committed a crime sometime between 1995 and 2003. Certainly, Judge. There is considerable record evidence which tells the Court that the defendant's conduct extended beyond the Protect Act. The Court already mentioned a number of them. His colloquy. His colloquy. All right. What else? His plea agreement.  Wait. Neither of which are charging documents. Neither of which are determinative of what he was actually charged with. What about the criminal information upon which he was initially held or any kind of documents with regard to his being taken into custody? I presume he committed a state crime first. He did commit a state crime first. And when did that occur? That occurred in 2003. No, I think it occurred in 2002. I'm sorry, 2002. Excuse me.  And you're an officer of the Court, Southern District U.S. Attorney's Office, an incredible office. Tell me now, and you've had this case for a long time, was he ever released from the time of his arrest in 2002 to the time of his plea? No, he was not. He was not. He was not. And was he charged with conducting a conspiracy for the distribution of drugs while he was incarcerated? He was not charged with a conspiracy charge. And so, therefore, how was it possible that he committed a crime in the year 2003 while he was incarcerated? And was he charged with selling drugs in Rikers or in the MDC? He was not. Because count six is the charge, the 2003 conduct. And it's distribution of drugs. It's not conspiracy. I mean, this is a mystery to the three of us. Judge, it's not unusual for inmates to be engaged in criminal activity. Well, I just asked you a question, counsel. As a representative of the United States government, now you tell me the answer. Was he charged with conduct that occurred in 2003? He was, yes. And show me, I want you to produce for me by letter a copy of the charging document with regard to that conduct. Your Honor, it is in the record here. Do you mean the page? Certainly, Judge. It's on our addendum to the government's brief. And what page is that? It's page four and five, Judge. Four and five of the addendum? Yes. Okay. And what does it tell me? It says, and I'll just read a paragraph. For count six, the United States attorney further charges from in or about 1995 up to and including in or about May 2003. That's not good enough, counsel. I'm sorry. I want to see a document that says that he committed a crime sometime in 2003. I'm not interested in 1995 to 2003. That's a little broad for you to get the benefit of the PROTECT Act. There's also the plea agreement, Your Honor, in which the government. I'm sorry. It's not going to do it for me. You don't have a document. You don't have an affidavit. You don't have a charging document. You know, we got into the categorical approach because state courts have lousy records. I'm flabbergasted that you don't have a record of some kind of criminal conduct that this man committed in 2003 when he was in jail. You've conceded that he was in jail. He was in jail, Your Honor, and the charging document is part of the record. Well, I understand the charging document can say that he's Jesus Christ Almighty, too, and he can plead guilty to it, but nobody will believe he is. So what we did in preparation for this once this argument was raised in the defendant's reply brief was we recalled the records from the 2002-2003 case.  We got those records. They're 21-year-old records, 22-year-old records that are sparse, to say the least, and they do not answer the question, I believe, that the court is asking about specific acts of conduct. What they do show is that all of the draft memoranda, cooperation memo, plea agreements, all the draft charging documents consistently list May 2003 as the conduct. My concern is count six is a substantive count. It charges both distribution and possession with intent to distribute occurring between 1995 and May 2003. First of all, I have trouble with the charge. Distribution takes place when something goes from one hand to another. How many distributions between 1995 and 2003 are supposedly covered in this count, and is it multiplicitous? I can't answer that question, Your Honor. I understand, counsel, that you're dealing with these very old records. Nevertheless, the suggestion has been made to us that this May date is a typo that has been repeated in other documents. So I think what I'm interested in hearing, which is a variation on Judge Wesley's questions to you, is what's the good faith basis for thinking anything went on in terms of this man's distribution or possession with intent to distribute drugs in April, May 2003? I mean, we're willing to hear it, but my concern is that there is no good faith basis to think that anything happened in May 2003. I will, you know, we will concede the point that there is no proper notes or document or memoranda that describes specifically what specific act was performed in May of 2003. But all of the documents that are contained in that limited amount of records all indicate May of 2003 as a consequence. The charge, though, the charge is problematic because each distribution should have been charged if he was being tried with the charge of distribution. I understand someone may have possession of a quantum of drugs for more than a single day, but rarely would we have possession of a quantum of drugs from 1995 to 2003. What I suspect this is, is charging multiple possessions in one count, which first of all is problematic. But what we don't have is anything indicating that he had possession as in either actual or effective control over drugs in May of 2003. So, I mean, we do have evidence of misconduct in April of 2002, 22 or 2002 and others, but there's nothing, nothing in the record that suggests that he was involved in possession or distribution in 2003. So why should we assume that that's correct for purposes of the Protected Act? I would suggest, respectfully suggest, Judge, that the record evidence of the defendant signing a plea agreement with those dates of his allocution of the description of the counts, including the date by Judge Katz at the change of plea proceeding, the paperwork that we have been able to obtain through the records- I mean, my concern right now is we have a challenge that he falls outside the Protected Act. And it seems to be a colorable claim. And the government is unable today, I understand the reasons for it, but nevertheless you are unable today to tell us, look, there was an undercover purchase on, you know, May 12th of his subordinate who he was directing from prison. We don't have anything like that. Again, Your Honor, the record evidence is the record evidence, and what I've told you about what we've been able to obtain does not answer the question, apparently, to the Court's satisfaction. No, go ahead and finish. I didn't mean to- I apologize. Go ahead. We've given you a hard enough time today, Mr. Gentile, but it's not over. I want to promise you that. It's my job. It's my job. The only thing I would just reiterate, Your Honors, is that this question is a 20-year-old question. No kidding. So let me ask- let's walk down the path together for a second. Okay. So the first question is 2002 versus 2003. Is it all 2002 and not some 2003? So that's the first question, okay? Do you agree with me? I mean, obviously that's what we're struggling with. But then there's the second question. Concur consecutive, right? Correct? All right. If we deemed- if we decided to overlook the waiver argument and said that the sentences had to have been concurrent since it's plain error, what does that do? And presuming then that- presuming the 2002 conduct was 10 years supervised release, right? Yes. And then the 2003 information- I'm not saying conduct, information- is five years consecutive. Correct. Now presume that we were to allow the argument- defendant to make the argument that that's illegal and has to be concurrent. What does that do to his sentencing in August of 2022 on the conduct that occurred in April of 2021- or 2022? Number one, is he still on supervised release? He is not, and we would agree with Judge Kahn's calculation. We did that painful calculation as well. He misses it according to our calculation by one day. May I throw another monkey wrench into all of this? Agreeing that they had to be run concurrent. I mean, if that came up before us on an appeal from the actual conviction, that would wind up in vacator of the sentence and allowing resentencing. Was it possible for the judge to impose higher sentences than 10 years on any of these counts? Or do we have the maximum the judge could have imposed? I believe on the count one, he could have imposed a lifetime supervised release. That's what he said at one point. So again, thinking this through, you've got an erroneous imposition of consecutive sentences. If it had gone back for correction, the judge could have achieved what he did through his consecutive sentences by imposing a higher sentence on count one. That's correct. Could have imposed 15 years, which might have been very similar to what the net effect of his consecutive sentences was. Is that right? That's correct, Judge. Yes. How does that play now? I mean, do we have some kind of harmless error? Do we have some kind of need to resentence? Does that fact that he could have imposed the same sentence, he just couldn't do it in consecutive terms, how does that play into this at all? Quite honestly, Judge, I'm not sure. And the reason I'm not sure is because he revoked that sentence eventually in May in 2017 on the first violation. Yeah, I said it was a mess. Yes. Okay. And for clarification, I think you just clarified, that would be count one of the 2002 indictment, not count one of the 2003 information. That's correct, Judge, yes. And do you – and I know Judge Wesley has a quick question. This circuit hasn't decided, but every other circuit that has addressed the issue of the 2003 amendment to the PROTECT Act has found that it's not retroactive. Does the government concede that? Yes, we do. Okay, thank you. I'm sorry, Judge. So if we – the third step that we were working towards, as of August of 2022, under what order of supervised release was Mr. Ramos subject? On the date that the warrant was issued, August 31st of 2022, assuming that the terms of supervised release did not run consecutively, he was not on supervised release. And so was he charged with – I'm sorry, he was on the 2002 five-year term of supervised release that was imposed on the first violation. Okay. Yeah. Because I thought there was still a supervised – you know, this makes me want to go back to state criminal court because parole was a hell of a lot easier to understand than supervised release was. But I made that – I crossed that bridge a long time ago. So he was held on a supervised release. Yes. All right. And that supervised release, if it's pre-protect act, can never – the aggregate – but he didn't acquire any – he didn't serve any time prior to this violation that would be credited against him. That's correct, Judge. All right. And lastly, there's a 60-month cap on it.  Okay. So now we're to the last question I wanted to ask you. This is a fellow who was charged with petty larceny because he had a dispute with his girlfriend. And he had a dispute with his girlfriend. He's charged with third-degree assault, which is a misdemeanor in New York, and petty larceny, which is a misdemeanor in New York. And then he was charged with second-degree harassment, which is not a crime. It's a violation in New York. And then he's charged with criminal possession of cocaine when he's in the hospital because he had the unfortunate occurrence to have been shot and his girlfriend was killed. That's correct. And at the time that he's sentenced – he's sentenced, and you made the argument that, quote – I'm reading now from the transcript of the presentation of Judge Kaplan – quote, this is from page 7 of the transcript. He was targeted. This is line 4 and 5. And the police report reflects that. He was sitting in the car with his now-deceased girlfriend – I'll leave her name out – and the gunman approached and fired shots into him. I would suggest this was not a random act of violence. He was targeted. This man is being violated because he was a victim of crime? Your Honor, this – what proof was there that – what proof did you present to Judge Kaplan? Because I didn't see any. Judge, because – because then Mr. Tremak got up and said, in connection with the events here, we're not aware of any investigation of police reports, investigative reports, the law enforcement that had any evidence to believe Mr. Amos was shot, was involved in narcotics distribution. So they clearly put it into play in front of the court. And yet at the time that he's sentenced, the court says, you know, I need to keep you – I need to keep you off the streets. A man has been shot. Your Honor, the defendant's criminal history – So his – his being a victim of crime was confirmation of his criminality? He was being sentenced based on his history and characteristics. And that's exactly what Judge Kaplan said in his sentencing. He – he said that – he noted the astonishing record of violence and drugs that the defendant had engaged in his entire life. Kind of a as ye sow, so shall ye reap kind of idea? I'm sorry? As ye sow, so shall ye reap. I get bitter every once in a while. And he admitted to firing a weapon five times. He was convicted of manslaughter when he was – But that's not the basis of this violation. No, but it's also – it's also – Doesn't five years sound like a lot of time for two misdemeanors and a – and a violation? Well, as the court knows, the – in supervised release, an inmate or a defendant isn't sentenced based on the violations themselves. Okay. Sentenced because of the breach of trust with the court. Okay. Well, it seems that what's – what's implied here is that there's the possession of drugs, which is not – not challenged here when he's taken to the hospital. And then the two incidents – the two shooting incidents in July and then August in which he is – I'm sorry, not July. There's another one. The August 27th one. I mean, it seems as if the court, knowing what it knows, is assuming that if he was the victim, he was the victim because he's back into the trade and into the criminal activity. But can the court assume that? Your Honor – The other shooting is December 3rd, 2021. I didn't see that right away. His vehicle was struck with multiple bullets. And then July 14th, 22, he's shot in the foot after a verbal altercation. Judge is looking at this totality and thinks that he's back into criminal activity, and in these circumstances, he's the victim rather than the perpetrator. But I'm wondering whether he can reasonably reach that conclusion on this record. My comments were meant to draw the inference between what the defendant was doing at the time that he was shot, connecting that to his prior criminal history, which almost all of his offenses were drug-related offenses. The circumstances of the shooting were such that he wasn't robbed. No one stuck him up and said, give me your money. Somebody came up and shot inside his car while he and his girlfriend were sitting there. Is the inference from that they did it because he was trafficking drugs? Is that what you were urging the court to infer? Yes. What about if he had done so in the past, so there were people that had gripes with him? I mean, so he gets violated because someone was ticked off at him because he ripped him off 10 years ago? I mean, it's such a leap of faith, Mr. Gentile. I mean, I understand, look, this guy is not a candidate for the Vienna Boys Choir. But by the same token, to say it just seems so strange to me that somebody goes to jail because they got shot and because their girlfriend gets killed. I mean, the fact that people may hold a grudge with him may be reflective of a criminal past. But a criminal past, not a criminal present. Well, Your Honor, I would respectfully disagree because the criminal present of him possibly dealing drugs, as indicated by the 10 glass scenes of cocaine that were found on him when he went to the hospital, may have gotten his girlfriend killed. Well, how much, what was the quantity level that he had on him? On the drugs? There were 10 glass scenes, small glass scenes. I don't know the weight off the top of my head. Okay. But, you know, as... Though in his probation report we're told that he'd been clean, this isn't personal use drugs. Is that right? Judge Kaplan didn't accept that. Yeah. Okay. Well, that's the point, is that we don't have to think that this is personal use just because of its small quantity. Because he disavowed personal use. He disavowed personal use and he'd been arrested 13 times prior, of which I'm not sure how many off the top of my head were drug related, but most of them were. So obviously the record, you know, of his criminal history, his girlfriend getting shot where he perhaps was the intended target, all of that is understandable why the court might draw certain inferences. I guess what concerns me is 20 years later, the government standing before us knowing that the original sentence was not proper under the law. I mean, you have the authority to say, you know, he waived it, but we, you know, we're not going to hold that waiver against him. I guess I'm troubled by the government's continuing to pursue this in light of the math. All we're saying, Your Honor, is that there are certain venues for challenging a final judgment as there were here. The defendant chose to forego those opportunities. I thought the argument we were going to hear from you was that in any event, you don't have the authority to violate court orders. You can go and challenge them any time you want, but once you're on, once you're subject to a court order of some kind, your obligation is to obey it. And that's what supervised release is. It's a court order. Well, there were opportunities for the defendant to challenge his supervised release on either direct appeal or habeas petition, or even a 32.1 modification of the supervised release, which he has still yet to do. So all we're asking is that there shouldn't be endless opportunities for challenging our previously abandoned claim, especially a final judgment from, you know, almost 20 years ago. Thank you. Thank you, counsel. Attorney Esteva, you have three minutes for rebuttal. Thank you. Thank you. To pick up on the most recent point where we left off, we only recently heard, as recently as yesterday, about the government's position with respect to honoring the error in the original 2005 judgment and this waiver argument as opposed to applying the supervised release terms concurrently as required by the statute. And why don't you deal with what I just said? You know, if you've got a court order that you don't think should be applicable to you, this happens all the time with contempt orders and other things, you don't get to violate it. You have to go into court and ask to have the order lifted, corrected, whatever. But as long as he was on supervised release, he couldn't violate it. Even if now, with hindsight, we can say, well, supervised release should have really been ended at that point. Respond to that for me. How does your client get to violate an order as long as it's in effect? In the district court, he could have argued that the district court lacked jurisdiction at that point to violate him for a supervised release term that was contrary to the law. So he could have always made that jurisdictional argument alone. It wouldn't have been a jurisdictional challenge. The order was in effect. And, I mean, this is the law with respect to court orders. You don't get just to flout them. You have to go and challenge them and get them lifted. And our argument is that he could have challenged it at the time of the violation, notwithstanding it being part of the original judgment, and could have continued to challenge the jurisdiction and the power of the court to have issued that original judgment and then to penalize him years later based on that. But he did? He did not. However, to the extent there are questions on this issue, this is something that was recently raised, and it could be remanded to the district court so that these issues could be briefed more fully. However, we take significant issue with the premise that the court should now be calculating the terms of supervised release concurrently pursuant to an error in the 2005 judgment as opposed to- You mean consecutively? Excuse me. Okay.  You understand my point. Unless the court has further questions. I'll rest. Thank you. All right. Thank you, counsel. You earned your money today, counsel. Well argued on both sides. Well argued. Plus a hold for time.